Judge Marshall
delivered the Opinion of the Court.
Montmollin having obtained several judgments against Mary Gaunt, administratrix of Anthony Gaunt, deceased, on which writs of fieri facias were returned “nulla bona,” filed this bill, alleging that the administratrix had received assets sufficient for the payment of all the decedent’s debts, but that she had returned no inventory or appraisement of the estate, and had wasted it. The bill further alleges, that one James March, who is made a defendant, is indebted to the administratrix, as such, by note, for four hundred dollars, which is prayed to be enjoined and finally subjected to the payment of the complainant’s judgments. A full account of the condition of the estate, and the administration of the assets, is also called for. And, in case the judgmfents should not be satisfied by the debt alleged to be due from March, a personal decree is asked for against the administratrix and her securities.
The administratrix filed a demurrer, which was overruled, and, at the same time, filed an answer, in which she exhibited an inventory and appraisement, returned after the commencement of this suit; and, in a subsequent amended answer, she presents and relies on a set *406 tlement, made, also, after the commencement of the suit, with commissioners appointed by the County Court, showing a balance against her of one hundred and seven dollars: except which, she says, she has fully and properly administered the assets. She admits the note of March to have been given in part payment for personal property of the decedent sold by her, but claims the debt as due to herself, individually, on the ground that she had taken all the property at its appraised value, and had been charged with, and accounted for, the same, and alleges that, if sold at public auction, it would have brought less.
Whenever an execution against the estate of a decedent is returned nulla bona while any debt remains due to the estate, the case is within the statute subjecting choses in action &c. to the payment of debts.
*406 It appears that the debt due from March was the price agreed to be given by him for Gaunt’s share of the materials and other stock pertaining to a chair manufactory, in which Gaunt and March were partners, and of which Gaunt’s share was appraised at five hundred and eighty eight dollars, but, shortly afterwards, sold by his administratrix for eight hundred and twenty dollars. The account taken in this case, under the direction of the Court, charges the administratrix with the appraised value of this and other property of the deceased, and shows a balance against her of two hundred and thirty dollars forty four cents; which sum was directed, by the decree, to be paid over, out of the proceeds of the note in question, in part satisfaction of the judgments set up in the bill — leaving more than one hundred dollars of their amount unprovided for.
For the reversal of this decree, Montmollin prosecutes a writ of error, contending that the whole of his judgment should have been satisfied, either out of the debt due from March, which is more than sufficient, or, if that debt could not be specifically reached, by a personal decree against the administratrix and her securities, on the ground of an alleged devastavit by her, in paying debts of inferior dignity to those for which the complainant’s judgments were obtained. It is not necessary, however, in our view of the case, to consider this last point, or the question of jurisdiction which grows out of it: for if, as we think is the case, the debt of March is to be considered as due to the administratrix *407 in her representative character, the case is clearly within the statute subjecting choses in action to the satisfaction of judgments. And as the debt, sought to be thus appropriated, exceeds the aggregate amount of the judgments set up in the bill, the Court should not have stopped short of securing full satisfaction by its decree.
An adm’r who has paid any of the debts of the intestate, out of his own funds, may elect to retain enough of the property, at its fair value, for his indemnity: the appraisement is prima facie evidence, only, of its value. But when not in advance for the estate, he has no such right ; a mere election to take the property at the appraisement, will not give him the right; & notwithstanding such unauthorized appropriation of it, the property will remain subject to ex’on against the decedent’s estate, if found; if not found, and the administrator permits a return of nulla bona, he will be liable for a devastavit.
The property purchased by March, having been a part of the decedent’s estate reduced into possession by his administratrix, she might undoubtedly have elected to retain it, and thus have made it her own, if she had paid debts to an amount equal to its fair value. And if, after such election, she had sold it to another as her own, the price obtained would have been hers. But, until she had paid debts to the value of the property, (of which the appraisement is not conclusive, but only prima facie, evidence,) she had no right to retain it, and could not, by her mere election, rightfully make it her own. There is no pretence that the administratrix had, in this case, paid, out of her own property, any debts of the intestate, either before the sale to March, or since; nor, indeed, is there any proof that she had done any act whereby the property, or its price, could become hers, in her individual right. She may have intended to convert the property to her own use, but she could not, by mere intention, make it her own. As long as it remained in her hands, in specie and unsold, it might have been seized under execution, as goods of the intestate, unless, by paying his debts, she had acquired the right of appropriating it to herself, and had elected to do so. By withholding it from an execution, and permitting a return of “ nulla bona,” while effects of the intestate remained in her hands unpaid for, she would undoubtedly have rendered herself personally liable for their full value, and the creditor might have proceeded against her for a devastavit. But, in such a case, if the property could be found, the administratrix could not, at her election, by merely claiming it, or refusing it to the execution, compel the creditor to resort to his action for a devastavit, but, instead of proceeding for a devastavit, he might, at his election, make a levy, which would not be defeated *408 at law, by any proof of an intention, on her part, to appropriate the property.
An adm'x, claiming a right to take the property at the appraisement, tho’ she had paid no debts of the estate when she sold it, charged herself, in her accounts, with the amount only, tho she sold the property, on credit, for much more: held, that, whether she sold it as her own, or sold it as adm'x, and whether the price obtained was more than it was worth, or not, a court of eq. will consider the debt due for the property, as a debt due the estate, and subject to a decree in favor of an attaching creditor.
The note, evidencing the debt from March, is not in the record; and it does not appear, certainly, whether it was made payable to Mrs. Gaunt, individually, or as administratrix; nor is there any direct proof that she assumed to sell the property in her individual right. That she did so, is only to be inferred from her setting up c]aim to the price. But we deem these points immaterial to the present inquiry, which is, m what character was she entitled to receive the price of the property; or, if it had been paid, in what character would she have been entitled rightfully to hold it? The natural and rational answer to this inquiry seems to be, that, as she had, up to the moment of the sale, no individual title to the property, but held it in a representative and fiduciary character, which required her to make sale of it for the benefit of the estate, the proceeds of the sale, when actually made, must be held m the same character, and subject to the same trust. In whatever character she may have assumed to hold or to sell the property, or whatever form may have been given to the sale of it, she became accountable for the whole of the price obtained. And, as she had no individual right to the property, a Court of Equity, which looks to the substance of things, will, while the price remains unpaid, regard it—though secured to be paid to her individually—as a debt equitably due to the estate or its representative, until, by rendering some equivalent for it, she has acquired some beneficial interest in it.
The excess of the price given by March, beyond the appraised value of the property, was not the consequence of any labor or extraordinary care bestowed upon it by the administratrix; and, were it even conceded, as contended for, that the price obtained was beyond the fair value of the articles sold, she could not be allowed to pocket the excess. But the fair inference, from the proof, is, that the articles were worth, at the time of sale, as much as March agreed to give for them. He says himself that he would have given one hundred *409 dollars more, if necessary, to obtain them; and he negatives, expressly, the idea attempted to be maintained by the administratrix, that any part of the price-was given to induce her to change her expressed intention- of carrying on the chair making business in competition with him, and of using these materials for that purpose. The sale to March was a fair one, and whatever he agreed to give, though beyond the appraisement, must be charged to the administratrix, as the value of that portion of the estate, and as constituting a fund for the payment of debts, &c. Of course, any interest which has been paid, or which has accrued on it, belongs to the same fund. Upon making up the account in this way, the balance against the administratrix will be found to exceed the amount of the note in question, with its interest; so that she has no right, individually, to any portion of the debt secured by it, until all debts are paid. And so much thereof as was necessary for the satisfaction of the complainant’s judgments, set forth in his original and amended bills, should have been appropriated by the decree to that purpose.
Wherefore, the decree is reversed, and the cause remanded, with instructions to render a decree in conformity with the principles of this opinion.